(Stark County Court of Common Pleas.)

## THE STATE OF OHIO v. SARAH SNELL.

*Indictment for shooting with intent to kill, and also shooting with intent to wound— Definition of offense—Malice defined—Conspiracy—Aiding and abetting defined— Reasonable doubt defined—Testimony of accomplice, weight of.*

### CHARGE TO JURY.

McCARTY, J.

Gentlemen of the Jury:—

This is the action of the State of Ohio against Sarah Snell, who was

jointly indicted with James C. Wiggins and Doctor W. Brown by the grand jury of Wayne county, Ohio, at the February Term, 1894, of the court of common pleas of that county, for the crime of shooting one William A. Mackey with intent to kill him, and also in another count in the indictment with shooting said William A. Mackey with intent to wound him the said William A. Mackey.

The indictment charges that James C. Wiggins, Doctor W. Brown and Sarah Snell, late of said county, on the 20th day of November in the year of our Lord one thousand eight hundred and ninety-three, with force and arms, at and in the said county of Wayne and state of Ohio, with a certain pistol then and there loaded with gunpowder and one leaden ball, which said pistol they, the said James C. Wiggins, Doctor W. Brown and Sarah Snell in their right hand then and there had and held, one William A. Mackey did unlawfully, maliciously and purposely shoot with intent then and there and thereby him the said William A. Mackey to kill, contrary to the form of the statute in such case made and provided and against the peace and dignity of the state of Ohio.

The second count in this indictment charges that the said James C. Wiggins, Doctor W. Brown and Sarah Snell, late of said county, on the 20th day of November, in the year of our Lord one thousand, eight hundred and ninety-three, with force and arms, at and in said county of Wayne, and state of Ohio, with a certain pistol then and there loaded with gunpowder and one leaden ball, which said pistol they, the said James C. Wiggins, Doctor W. Brown and Sarah Snell in their right hand then and there had and held, one William A. Mackey did unlawfully, maliciously and purposely shoot with intent then and there and thereby him, the said William A. Mackey, to wound, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state of Ohio.

The indictment charges the same criminal act in two counts. One shooting with intent to kill; and the other shooting with intent to wound. You will have the indictment with you in your jury room, and can read it in detail.

You will observe that this indictment charges three persons jointly with the commission of this alleged crime. Under the law each may be tried separately, and each, if guilty, may be convicted. This investigation is to determine the guilt or innocence of the defendant, Sarah Snell, alone.

To this indictment, the defendant Sarah Snell has pleaded "not guilty." And that plea of not guilty puts in issue every material allegation in the indictment, and cast upon the state the burden of proving the guilt of the defendant as she stands charged in the indictment, beyond the existence of a reasonable doubt.

These material allegations in the first count in the indictment, are, that James C. Wiggins, Doctor W. Brown and the defendant on the 20th of November 1893, at and in the county of Wayne, Ohio, with a certain pistol then and there loaded with gunpowder and one leaden ball, did unlawfully, maliciously and purposely shoot one William A. Mackey with intent then and there and thereby him the said William A. Mackey to kill.

And these material allegations in the second count in the indictment are that James C. Wiggins, Doctor W. Brown and the defendant on the 20th of November 1893, at and in the county of Wayne, Ohio, with a certain pistol then and there loaded with gunpowder and one leaden ball, did unlawfully, maliciously and purposely shoot one William A. Mackey with intent then and there and thereby him the said William A. Mackey to wound.

The statute defining this crime provides that whoever maliciously shoots another person with intent to kill, wound or maim such person, shall be imprisoned in the penitentiary not more than twenty years nor less than one year.

It is also provided by the statute that whoever aids, abets or procures another to commit any offense may be prosecuted and punished as if he or she were the principal offender.

This indictment, charging as it does that the defendant with the others named in the indictment, did unlawfully, maliciously and purposely shoot the said William A. Mackey with intent to kill, has in it as a necessary element to be proved, that the shooting was done maliciously; that is, with malice—which means the doing of a wrongful act intentionally without just cause or excuse—that state of mind which prompts a conscious violation of the law to the prejudice or injury of another.

Malice does not necessarily mean ill-will, or hatred toward the person injured. It is evidenced by an act or acts which sprung from a wicked motive, attended by circumstances indicating a heart regardless of social duty, and bent on mischief. Malice is said to be express when the cruel act is done with deliberate mind, with a settled and formed purpose. This kind of malice is generaly evidenced by the circumstances preceding and attending the transaction complained of, or by threats, menaces, former grudges, lying in wait, concerted schemes to do injury, or by an unusual degree of cruelty attending the act.

Malice is implied when the unlawful act done is sudden and without any great provocation, and also where the act done necessarily shows a depraved heart, as the giving of poison and the like.

The first count charges that the shooting was done with intent to kill Mackey. The State must then prove beyond a reasonable doubt that the defendant shot Mackey with the intention of killing him, before the defendant would be guilty under that count.

The second count charges that the shooting was done with intent to wound Mackey. The State must then prove beyond a reasonable doubt that the defendant shot Mackey with intent to wound him in his body or limbs before she would be guilty under the second count.

I have said to you that the State must prove beyond a reasonable doubt that the defendant shot Mackey with intent to either kill or wound him, before it can convict the defendant.

By this I do not mean, and the law does not require that the defendant Mrs. Snell should have with her own right hand held the pistol, and fired from the pistol the bullet that struck Mackey in the back part of his neck or head.

Persons participating in the commission of a crime do so either as the principal offenders, or as those who aid, abet or procure the commission of the crime. A principal offender is the one who is the immediate perpetrator of the criminal act.

The word "aid" means to help or assist or strengthen; the word "abet" means to encourage, counsel, incite or assist in a criminal act; and the word "procure" means to persuade, to induce, to prevail on, to cause, to bring about. And whoever aids, abets or procures another to commit any offense, may be prosecuted and punished as if he or she were the principal offender.

The State does not claim that Mrs. Snell did the physical act of shooting Mackey. It claims that Brown did the shooting; but that Mrs. Snell procured Wiggins to cause the life of Mackey to be taken, and that Wiggins as his part of that conspiracy or unlawful enterprise, procured Brown, either for money offered him or promised to him by Wiggins, or through

fear from threats made to him by Wiggins, that he, Wiggins, would kill him or kill the members of his family if he did not take the life of Mackey, and that Brown was thereby procured or induced by Wiggins to shoot Mackey, with intent to kill him. And if you should find from the evidence, beyond a reasonable doubt, that the defendant Mrs. Snell procured Wiggins to cause the life of Mackey to be taken, and Wiggins as his part of that conspiracy, procured or caused Brown to do the shooting, with that intent, and that Brown did shoot Mackey at the time and place charged in the indictment, in furtherance of that conspiracy, with intent to kill him, then Mrs. Snell would be as guilty of the crime charged as if she herself had fired the shot that struck Mackey.

But if she did not procure Wiggins to cause Mackey to be shot, or procure Brown to shoot Mackey, she cannot be convicted, no matter what Wiggins or Brown did.

It is not enough that Mrs. Snell should have merely known before the time of the shooting that Wiggins intended to cause Mackey's life to be taken—nor would knowledge on her part coupled with consent that the shooting should be done, be sufficient to constitute the crime charged against her; but before you can return a verdict of guilt against her, you must be satisfied beyond a reasonable doubt, that she advised or hired, or incited, or commanded, or counseled said Wiggins, so as to have been effective in influencing him or causing him to procure or bring about the shooting of said Mackey.

If the defendant procured Wiggins to cause Mackey to be shot, and Wiggins did procure Brown to do the ·shooting, and he, Brown, did it, it is not necessary to a conviction of the defendant that she ever saw or heard of Brown before the shooting was done.

It is proper that I should define conspiracy. I will say to you that a conspiracy is a combination of two or more persons by some concert of action to accomplish some criminal or unlawful purpose, or some purpose not in itself criminal or unlawful by criminal or unlawful means.

Before the defendant in this case can be convicted of the offense with which she stands charged in the indictment, the State must prove beyond the existence of a reasonable doubt, that a conspiracy was entered into by and between her and the other defendants charged in the indictment, to unlawfully, purposely and maliciously shoot one William A. Mackey at or about the time charged in the indictment, and with the intent charged therein; or that she entered into such conspiracy with the defendant James C. Wiggins, who thereafter, in pursuance of said conspiracy, procured one Doctor W. Brown to so shoot said William A. Mackey. That is to say, before the defendant can be convicted of the offense with which she stands charged in the indictment, you must find beyond the existence of a reasonable doubt, that she did procure, bring about, compass or effect through the agency of said Wiggins and Brown, the shooting of William A. Mackey as charged in the indictment.

The accused cannot be lawfully convicted unless the evidence establishes her guilt beyond a reasonable doubt. What is a reasonable doubt?

A verdict of guilt can never be returned without convincing evidence. The law is too humane to demand a conviction while a rational doubt remains in the minds of the jury. You will be justified and required to consider a reasonable doubt as existing if the material facts, without which guilt cannot be established, may be fairly reconciled with innocence. In human affairs, absolute certainty is not always attainable. From the nature of things reasonable certainty is all that can be attained on many subjects.

When a full and candid cosideration of the evidence produces a conviction of guilt, and satisfies the mind to a reasonable certainty, a captious or ingenious artificial doubt is of no avail.

You must look then to all the evidence, and if that satisfies you of the defendant's guilt, you must say so.

But if you are not fully saisfied, but find only that there are strong probabilities of guilt, the only safe course is to acquit.

If from a full consideration of all the testimony given by the State and the defendant on the subject of the conspiracy claimed by the State to have been entered into by and between Mrs. Snell and Wiggins, you are satisfied beyond a reasonable doubt that Mrs. Snell advised or hired or incited or commanded or counseled said Wiggins in such manner as to influence him or cause him, Wiggins, to procure or bring about the shooting of said Mackey, then whatever was done or said by Wiggins and Brown in furtherance of that conspiracy, would, in law, be the act and declaration of Mrs. Snell, and testimony tending to show what was done by Wiggins and Brown in the carrying out of that conspiracy, and as tending to show that Wiggins procured Brown to shoot Mackey, if he did shoot him, may be considered by you as bearing upon the question of the guilt or innocence of the defendant.

You will determine from the evidence whether or not Brown shot Mackey on or about November 20th 1893, in Wayne county, Ohio.

If Brown shot Mackey, did Wiggins procure or cause him to do it? Did Mrs. Snell procure Wiggins to cause Mackey to be shot?

In determining whether Mrs. Snell procured Wiggins to cause Mackey to be shot, you will inquire what motive, if any, she had in wanting Mackey shot. Had she a divorce suit pending with her husband, brought by Jacob Snell against her and Wiggins? What relations, if any, did Wiggins sustain to her? Was Wiggins charged in that divorce suit with improper relations with her? Did Mrs. Snell believe Mackey was an important witness against her in that cause? Was Mackey's life insured in such manner that Mrs. Snell believed she would be the beneficary in case of Mackey's death, or did she cause Mackey's life to be insured for the benefit of her daughter, Mrs. Mackey, and did she cause the policy to be assigned to her so that she might take care of it for her daughter?

Was she simply, as she claims, on unfriendly relations with Mackey because he married her daughter? Had she on that account disinherited her daughter? Did she afterwards relent and conclude to make provision for her daughter by causing the policy of insurance to be issued on Mackey's life? Was that policy taken out in good faith for the benefit of her daughter?

Certain documentary evidence was introduced on the part of the State. The petition of Jacob Snell against his wife and others for divorce, alimony, and an injunction to prevent the disposal or incumbrance of his wife's property, was allowed to go to the jury for two purposes, only; the one as tending to show the fact that such an action was pending between them at the time this alleged crime was committed—the other as tending to show the grounds for the action as stated in the petition, but you will not consider it as any evidence of the truth of the statements contained in it.

Also a petition of Mackey against Mrs. Snell, Wiggins and Brown, that was admitted to show the pendency of that action, and what was claimed as the grounds of the action, and that may be considered by you only as tending to show the pendency of such action, and the grounds thereof, as set forth in the petition.

Also the petition in the case of Mrs. Snell against her husabnd, Wiggins and Mackey, and this was admitted as tending to show the claim she made against them, but not as evidence of the truth of the claim.

The State claims that this action of Mrs. Snell against her husband, Mackey and Wiggins, was a mere pretense, having no real ground for action in it, but brought for the purpose of forming the basis of a settlement on her part with Mackey, whereby she was to convey certain property to Mrs. Mackey, and thereby bring about a reconciliation between herself and Mackey.

Also the paper purporting to contain he terms of a settlement between Mrs. Snell and Mackey, and a deed to Mrs. Mackey for certain property has been offered in evidence. These papers must not be considered by you for the purpose of in any way contradicting or impeaching the testimony of Mackey, but only as tending to throw light on the conduct of the defendant Mrs. Snell, as bearing upon her guilt or innocence of the offense charged in this indictment. You will determine what weight they should have. Certain letters and telegrams have been admitted in evidence. You will give to them such weight as you believe they are entitled to in the determination of the guilt or innocence of the defendant. The policy of insurance I have mentioned on the life of Mackey in favor of his wife, and the assignment or transfer of the same to the defendant, are also in evidence. Also the transcript of the case of Wiggins against Martin is in evidence.

I want to call your attention to the testimony of Doctor W. Brown, who was jointly indicted with the defendant and Wiggins.

He testified that he did the shooting of Mackey, and he is now serving a term in the penitentiary of the state for the part he took in that transaction. He admits and testifies that he was an acomplice in the commission of that crime. I call attention to his testimony for the purpose of saying that the testimony of an accomplice in crime should be very cautiously received, and should be suspiciously scrutinized by the jury. It would be unsafe to convict the defendant upon the uncorroborated testimony of Brown, as to any fact necessary to be proved to establish the guilt of the defendant. Does the testimony of other witnesses corroborate him? Do the circumstances proven in the case corroborate him?

You will determine in the light of all the testimony, and circumstances in the case, what weight should be given to his testimony. In the light of all of the testimony on the subject, determine whether Brown shot Mackey, and if he did shoot him, with what intent did he do so? Was it with intent to kill him or to wound him?—

In determining the question as to whether Wiggins procured Brown to shoot Mackey, you will ascertain from the testimony what Wiggins did, if anything, in furtherance of the commission of the crime, and in this connection you should consider what efforts he made, if any, to procure others to commit the same offense. Did he send Shaffer from Indiana to commit the crime? Did he furnish Brown a vial of poison with which to poison Mackey? Did he furnish the revolver to Brown with which the shooting was done? Did he accompany Brown part of the way from Indiana to where the shooting was done?

From all that he said, and all that he did, as shown by the testimony, you will determine whether or not he procured or caused Brown to shoot Mackey.

Any declaration or statement of the defendant, Mrs. Snell, which have been admitted in evidence, should be received by you with caution, and should be carefully scrutinized, lest the language of the witness be substituted for that of the defendant, and for the further reason that they may

have been imperfectly heard, defectively remembered, or inaccurately related by the witness detailing the same.

I should also call your attention to the fact that certain testimony has been given tending to show that the defendant and Wiggins sustained adulterous relations with each other. I will say in relation to this that even though the proof should satisfy you beyond a reasonable doubt that she and Wiggins did sustain such relations with each other—this would not justify you in finding the defendant guilty of the crime with which she stands charged in the indictment, unless the proof further satisfies you beyond the existence of a reasonable doubt, that she is guilty of the offense of procuring, either directly or through the instrumentality of James C. Wiggins, the shooting of William A. Mackey by Doctor W. Brown, in the manner and form set out in the indictment.

In this case the State seeks to establish the fact of conspiracy against the defendant, by what is known as circumstantial evidence. Circumstantial evidence is admissible under our law to prove the guilt of the defendant, but this kind of evidence can only be conclusive where every necessary link in the chain of circumstances from which the deduction of guilt is sought to be drawn, is proved beyond the existence of a reasonable doubt; and if any fact or circumstance in the case necessary to be proved in order to draw the deduction or inference of guilt against the defendant is not proved beyond the existence of a reasonable doubt, then he jury would not be justified in returning a verdict of guilty; for where the circumstances are reconcilable upon the theory of the accused's innocence, or where there are not sufficient facts proved beyond the existence of a reasonable doubt from which he jury may safely draw the inference of guilt, the only prudent course to pursue would be to acquit the defendant.

No inference can be drawn against the defendant in this case from the fact that the court permitted he acts and declarations of the alleged co-conspirators of this defendant, done and said in her absence, to be given in evidence against her. The only effect of this action of the court is to make the fact of conspiracy a necessary ingredient in the crime charged against the defendant in the indictment, and before you can convict her of the offense with which she stands charged, you must find independent and uninfluenced by any finding of the court in this case, the fact of conspiracy to commit the offense charged in the indictment, and this you must find beyond the existence of a reasonable doubt.

The State claims that the circumstances relied on by it to establish the guilt of the defendant are not reconcilable on any other theory than that of the guilt of the defendant, and it claims that each and every circumstance is reconcilable on the theory of the guilt of the defendant.

The defendant claims that each and every circumstance claimed by the State to show the guilt of the defendant, is reconcilable with her innocence, that her acts and declarations, her letters and telegrams, all related to business transactions, and to nothing else.

That the telegrams claimed by the state to be in cypher, she claims meant what they said, that when she said "proceed east of here," she meant to proceed east to some little town and take care of some claim for which she was liable with Wiggins for the care of a horse; and so with the others, that they related to real business transactions, and had no relevancy to the shooting of Mackey, or the commission of any other criminal act.

You will have all of these letters and telegrams with you in your jury room, and you should read them, and in the light of the testimony and the circumstances in evidence determine the meaning the parties intended to convey to each other thereby, and give to them such weight as they

should have in the determination of the guilt or innocence of the defendant.

Testimony has been introduced on the part of the defendant tending to show that before the alleged commission of the offense charged in the indictment she sustained a good character for peace, quietness and morality. You will consider this testimony bearing on the defendant's good character in these respects, as you consider other evidence in the case, and give it such weight, and only such weight, as you believe it would have in the determination of the guilt or innocence of the defendant.

Testimony has been introduced tending to impeach the general reputation of the witness Charles Hizer for truth and veracity, and also tending to show that his general reputation for truth is good.

I will say to you that if you believe said witness knowingly testified falsely, to a material fact, you are at liberty to discard his testimony altogether; but the credibility of witnesses is a subject for your consideration and decision, and you should give the testimony of each witness such weight, and only such weight, as you think it deserves.

In determining what weight to give to the testimony of Charles Hizer you will take into the account his age, his appearance on the witness stand, his manner of testifying, the character of the persons called to testify against his general reputation for truth, the character of the person called to sustain him, the means that they all had of information on the subject of his truthfulness, and from all of it, determine what weight should be given to his testimony.

Some testimony was admitted tending to show the physical and mental condition of the defendant during the period when the State claims that she was engaged in the conspiracy to procure the shooting of Mackey. Counsel for the defendant stated during the argument that they do not claim that during said peirod she was insane, or that she was in such mental condition as that she did not know right from wrong. I will therefore say to you that you need not consider that testimony given on the subject of her mental condition for any purpose.

Such testimony is only admissible as tending to establish the defense of insanity, and as the defendant does not claim that she was insane, or that she did not know right from wrong at the time the alleged conspiracy is claimed to have been made, and carried out, you will therefore give the question of her mental condition no consideration, but confine your investigations as to whether or not she is guilty of the crime charged against her in the indictment.

In this case the State has introduced evidence tending to show that the defendant in the Spring of 1893, secured a policy for $10,000. upon the life of William A. Mackey in favor of her daughter as beneficiary, and that she thereafter caused the same to be transferred by her daughter to her. This the State claims, is a criminating circumstance and furnishes at least one of the motives which it claims actuated the defendant in the commission of the alleged offense. The defendant on the contrary, has introduced testimony tending to show that in the taking out of said life insurance policy upon the life of said William A. Mackey, and in having it transferred to herself, she acted in good faith and with the sole intention and purpose of providing for her daughter, Mrs. Mackey, in case of the death of said William A. Mackey before that of the said Clara Mackey.

I will say to you as a matter of law, if you find from the evidence introduced upon that subject that the defendant did act in good faith in taking out the said policy of insurance upon the life of said William A. Mackey, and in having the policy transferred to herself, that then and in that event her acts ia so doing could not furnish any motive for the com-

mission of the offense charged against the defendant in the indictment, and in that event you should not consider the conduct of the defendant in taking out said life insurance upon the life of said William A. Mackey and having it transferred to herself, in determining the issue as to whether or not the defendant is guilty of the offense with which she stands charged in the indictment. You will determine how this is from the proof.

As I have said, you will have all of the papers, letters, and telegrams that have been offered in evidence with you in your jury room. They are all proper items of evidence to be considered by you along with the other testimony in the case.

The paper purporting to contain the terms of a settlement between Mackey and Mrs. Snell will be before you. If actions were pending in good faith between said parties, and were in good faith settled between them, as set forth in that paper, and nothing more was done or intended to be done or accomplished by that so-called settlement, then such paper would not be evidence of any statement or confession against the defendant. You will determine how this is from the evidence and circumstances in the case.

You are the sole judges of the facts. The court cannot determine the facts for you, and I have purposely avoided going over the testimony in detail, upon either side. You will remember it all, weigh it all, consider and apply it all, and from it all determine the guilt or innocence of the defendant.

If, in the determination of the many legal questions which have arisen during the trial, I have been unfortunate enough to have seemed to lean toward one side or the other, this should have no possible effect on your minds in reaching a conclusion from the evidence.

You will receive what I have said to you as the law of the case, as such; and from the testimony, in the light of these instructions, determine the question whether the defendant is or is not guilty of the crime charged in the indictment.

If you find from the testimony, in the light of those instructions, beyond a reasonable doubt, as I have defined reasonable doubt:

First—That the defendant, Sarah Snell, advised, or hired, or incited, or commanded, or counseled, said Wiggins so as to have been effective in influencing or causing him to procure or bring about, the shooting of said Mackey by Doctor W. Brown.

2nd—That such shooting was done unlawfully, purposely and maliciously:

3rd—That such shooting was done with intent to kill said Mackey; and

4th—That such shooting was done in Wayne county, in the state of Ohio, it will be your duty to find the defendant guilty as she stands charged in the first count in the indictment, and not guilty as she stands charged in the second count in the indictment.

But if you should fail to find any one or more of these propositions in favor of the State, then your verdict should be not guilty—unless you should find the other proposition in favor of the State, and that the shooting was done with intent to wound, and was not done with intent to kill; in that event you should find the defendant not guilty as she stands charged in the first count in the indictment, but guilty as she stands charged in he second count in the indictment.

If you find the defendant not guilty of either shooting with intent to kill or with intent to wound. you will return your verdict of not guilty.

Gentlemen, you have listened very patiently to this long trial. The case is an important one—important to the state, and important to the defendant. It has been very carefully and ably tried and argued on both

sides, and it now remains for you, aided as you *are by the arguments of counsel, from the testimony in the light of the instructions I have given you, to determine the guilt or innocence of the defendant, Mrs. Snell.

I trust, and have every reason to believe, that you will give this case that just, patient, careful and impartial consideration its importance demands. If the defendant is guilty, say so by your verdict. If she is not guilty, say so by your verdict.

You will do your duty in the light of the evidence and the law irrespective of the consequences either to the State or to the defendant.

You will, upon retiring, appoint one of your number foreman. I will have proper forms of verdict sent you which you can readily adopt to your finding. Having agreed upon a verdict, have your foreman sign it, and bring it with you into court.

You may retire.